COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MICHAEL ROMERO, | | No. 08-10-00074-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 409th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC # 20080D04785) |

**O P I N I O N**

Michael Romero is appealing his convictions of murder (Count I) and engaging in organized criminal activity (Counts II and III). We affirm.

**FACTUAL SUMMARY**

Valentin Ray Rodriguez and several friends, including Blake Klimasara, David Medina, Rolando Granado, Michael Maldonado, Michael Bocanegra, and John Gutierrez, attended a party at the home of Alexander Johnson. Klimasara estimated that thirty-five people were at the party and he did not know all of them. Appellant, who is a member of the criminal street gang, the Crips, went to the party with Shaka King and several women. Other gang members were in attendance, including Marcus White, Jory Babers, Antoine Baker, and Jerome "Swat" Saunders. These individuals are either members of the Crips or Hated by Many, which is a subset of the Crips. Michael Maldonado testified that several males at the party were throwing the Crips "gang sign."

After they had been at the party for about an hour, Rodriguez saw Marcus White kissing Aileen Favela, who is the girlfriend of a close friend, so he pulled her aside and said something

to her. She asked Rodriguez not to tell her boyfriend. Rodriguez then went into the restroom. White was upset and began telling his friends that Rodriguez was a "cock block." Klimasara explained that the term is used when an individual interferes with a guy's chances of picking up a girl. When Rodriguez came out of the restroom, White confronted him and both White and Appellant started calling him a "cock block." With several people crowded around, White and Rodriguez began shouting at each other and then White and his friends began pushing Rodriguez. Antoine Baker testified that he was the first person to punch Rodriguez. Appellant then struck Rodriguez in the side of the head with a fist. White joined Baker and Appellant in punching him. Medina began pushing Rodriguez toward the front door while attempting to block the punches thrown by the group of men chasing them. Once outside, Appellant, White, and the others began assaulting Rodriguez and he fell or was pushed to the ground. Some witnesses stated that White punched Rodriguez in the face and he fell, striking his head on the sidewalk. While Rodriguez was on the ground, the group continued to kick and stomp him until Johnson got in the middle of the group and began pushing people away. Witnesses identified Appellant as one of the people who kicked Rodriguez in the head and torso while he was on the ground. After Johnson stopped the assault, Klimasara went over to Rodriguez and saw that he was unconscious and bleeding from the nose and the back of the head. Medina, Maldonado, and Bocanegra carried Rodriguez to a car and they left. Appellant found one of Rodriguez's shoes in the front yard and held it up while laughing, stating, "[W]e got the shoe of the guy who got beat up." When they went back inside of the house, Appellant was waving the shoe and stating that he "whooped his ass."

Rodriguez's friends took him back to his apartment rather than taking him to a hospital. Rodriguez did not regain consciousness and his friends found him unresponsive and not

- 2 -

breathing the following morning. Emergency medical personnel arrived at the scene and performed CPR but Rodriguez was pronounced dead at the scene.

Dr. Paul Shrode, the Chief Medical Examiner for El Paso County, performed the autopsy. The external examination showed bruising and abrasions on the face, neck, and back. The bruising was consistent with multiple assailants punching, kicking, and stomping the victim. The left eye was swollen shut and there was an abrasion on the right side of the face. Dr. Shrode also found two contusions on the back of the head with the larger one on the occipital region. Just beneath the large abrasion, Dr. Shrode discovered a large skull fracture. When Dr. Shrode examined the brain, he found multiple impact sites and blunt force trauma consistent with the victim's head receiving multiple blows by being punched, kicked, or stomped. The examination of the brain also revealed subarachnoid hemorrhages. In Dr. Shrode's opinion, the skull fracture was consistent with Rodriguez falling and striking his head on a hard surface.

The internal examination also revealed that Rodriguez had suffered significant trauma to the atlanto occipital joint which is where the cervical spine joins the skull. This type of injury could have been caused by the victim being kicked in the head. Bruising was also found in the muscles of the neck consistent with the victim being kicked or stomped on the neck. During the examination of the internal organs, Dr. Shrode discovered that the lungs and heart had been bruised during the assault. He described the injuries to one of the lungs as severe trauma. Dr. Shrode testified that the injuries to the skull, brain, atlanto occipital joint, heart, and lungs constituted serious bodily injury which created a risk of death. With respect to cause of death, he explained that in forensic pathology, there are two types of causes of death: immediate cause of death and proximate cause of death. The proximate cause of death is the thing that put it all in motion which in this case, is the blow to the head which caused the skull fracture and the brain

injury. The immediate cause of death was that Rodriguez's heart stopped beating as a result of the brain injury. In his opinion, the main cause of death was the blunt force trauma to the head but the injuries to the lungs and heart could have resulted in death if not for the brain injury.

The jury found Appellant guilty of murder (Count I) and engaging in organized criminal activity (Counts II and III) as alleged in the indictment. With respect to Count I, the jury assessed Appellant's punishment at imprisonment for a term of fifteen years and a fine of $10,000. As to Counts II and III, the jury assessed Appellant's punishment at imprisonment for a term of ten years, probated for ten years.

## SUFFICIENCY OF THE EVIDENCE

In Point of Error One, Appellant challenges the legal and factual sufficiency of the evidence supporting his convictions. Approximately six months before Appellant filed his brief, the Court of Criminal Appeals abandoned factual sufficiency review in those cases where the burden of proof is beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards, therefore overruling the factual sufficiency review adopted in *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996)). The Court determined that the legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks*, 323 S.W.3d at 894-95. Therefore, in accordance with *Brooks*, we will review Appellant's sufficiency claims under the *Jackson* legal-sufficiency standard and determine whether the evidence is sufficient to support each challenged element of the criminal offense beyond a reasonable doubt. *See Brooks*, 323 S.W.3d 894-95, *citing Jackson*, 443 U.S. at 319, 99

S.Ct. 2789.

Under the *Jackson* standard, a reviewing court must consider all of the evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id*.; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.).

### Count I - An Act Clearly Dangerous to Human Life

Appellant first argues that the evidence is insufficient to prove beyond a reasonable doubt that he committed an act clearly dangerous to human life. Count I of the indictment charged Appellant with murder under Section 19.02(b)(2) of the Texas Penal Code and included six paragraphs alleging different manner and means (Paragraphs A through F). *See* TEX.PENAL CODE ANN. § 19.02(b)(2)(West 2011). Paragraph A alleged that Appellant, with intent to cause serious bodily injury to Valentin Ray Rodriguez, committed an act clearly dangerous to

human life, to-wit: striking Rodriguez about the body and head with Appellant's hand and kicking Rodriguez about the body and head with Appellant's foot.[1] Paragraphs B through F alleged that Appellant committed an act clearly dangerous to human life by: chasing and assaulting Rodriguez in concert with other individuals (Paragraph B); striking Rodriguez about the head with the hand of the Appellant (Paragraph C); striking Rodriguez about the body with the hand of the Appellant (Paragraph D); kicking Rodriguez about the head with the foot of the Appellant (Paragraph E); and kicking Rodriguez about the body with the foot of the Appellant (Paragraph F). The court's charge included an instruction on the law of parties and permitted the jury to find Appellant guilty of murder as the primary actor or as a party. The jury found Appellant guilty of Count I as charged in the indictment.

In his brief, Appellant challenges the sufficiency of the evidence supporting his conviction of Count I on the ground that the State failed to prove that he committed an act clearly dangerous to human life which caused Rodriguez's death. Appellant argues that it was Marcus White who struck Rodriguez causing him to fall and strike his head on the sidewalk and that was the injury which resulted in Rodriguez's death. Appellant does not challenge any other elements of Count I, such as identity or intent to cause serious bodily injury, and he does not address the parties theory at all. We begin by addressing the law of parties.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX.PENAL CODE ANN. § 7.01(a)(West 2011). The trial court's charge instructed the jury that a person is criminally responsible for an offense committed by the conduct of another if,

---

[1] Paragraphs A through F further alleged that Appellant used and exhibited a deadly weapon during the commission of the offense, namely, his hand and/or foot during the commission of the offense. Appellant does not challenge the sufficiency of the evidence to prove the deadly weapon allegation.

acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See* TEX.PENAL CODE ANN. § 7.02(a)(2)(West 2011). The charge also instructed the jury that mere presence at the scene of an offense will not make a person a party to an offense. The application paragraph of the court's charge does not apply the law of parties to the facts of the case but we must measure the sufficiency of the evidence by a hypothetically correct jury charge. *See Adames v. State*, 353 S.W.3d 854, 861-62 (Tex.Crim.App. 2011). Applying the law of parties to the offense of murder under Section 19.02(b)(2) and to the evidence as it relates to Paragraph A of Count I, Appellant is criminally responsible as a party to this offense if, acting with the intent to promote or assist in the commission of the murder of Rodriguez by Marcus White, Antoine Baker, James Templeton, or Jory Babers, Appellant solicited, encouraged, directed, aided, or attempted to aid White to commit the murder, and White, Baker, Templeton, or Babers, acting with the intent to cause serious bodily injury to Rodriguez, committed an act clearly dangerous to human life, to-wit, striking Rodriguez about the head and body with the hand of White, Baker, Templeton, or Babers, and kicking or stomping Rodriguez about the head and body with the foot of White, Baker, Templeton, or Babers, that caused Rodriguez's death. In determining the sufficiency of the evidence under the law of parties, this Court may look to events occurring before, during, and after the offense, and may rely on actions of the defendant that show an understanding and common design to commit the offense. *King*, 29 S.W.3d at 564.

The evidence showed that Appellant instigated the assault which led to Rodriguez's death. James Templeton testified that he was in the backyard with Antoine Baker and Jory Babers when Appellant approached them and talked about "violating someone because they didn't know their Crip knowledge." Templeton explained that "violating somebody" meant

hitting someone who disrespected you. Templeton said that Romero and the others went inside and about a minute later the "ruckus" started inside of the house. Appellant further instigated the assault by yelling "cock blocker" at Rodriguez. He participated in the initial assault on Rodriguez by striking him in the head with his fist while Rodriguez and White were yelling at each other in the house. Appellant, along with White and the other assailants, chased Rodriguez out of the house and they continued to assault him in the front yard by punching and kicking him. At least one witness said that Appellant pushed Rodriguez to the ground and the group, including White, Baker, Templeton, and Babers, surrounded Rodriguez and began punching, kicking, and stomping his head and body. Other witnesses said that White struck Rodriguez's head with his fist and Rodriguez fell and struck his head on the sidewalk knocking him unconscious. The group, including White and Romero, then began violently stomping and kicking Rodriguez's head and body and the attack continued for one to two minutes until other people pulled the assailants away from Rodriguez. The evidence also showed that Appellant picked up Rodriguez's shoe after the assault and held it up like a trophy while laughing. Appellant also told people after the assault that they had "whooped his ass." A rational trier of fact could have reasonably concluded that Appellant acted with the intent to promote and assist in the commission of the murder under Section 19.02(b)(2) and he directed, encouraged, and aided the co-defendants' commission of murder by telling the co-defendants they were going to "violate" Rodriguez, yelling at Rodriguez and making one of the initial punches to Rodriguez's head while he and White were shouting at each other, chasing Rodriguez outside, pushing him to the ground, kicking him while he was on the ground, and bragging about the assault after Rodriguez's friends dragged him away, unconscious and badly injured. *See Johnson v. State*, No. 05-04-00971-CR, 2006 WL 401127, at *3 (Tex.App.--Dallas, Feb. 22, 2006, pet. ref'd)(not

designated for publication)(evidence sufficient to support defendant's murder conviction as a party where he instigated the fight with the victim and participated in assault on the victim with co-defendant). Given our conclusion that the evidence is legally sufficient to support Appellant's conviction as a party, it is unnecessary to address whether it is also sufficient to support his conviction as a principal or primary actor. Issue One is overruled.

*Counts II and III*

Appellant next argues that the evidence is insufficient to support his convictions of engaging in organized criminal activity. We understand him to argue that the State failed to prove beyond a reasonable doubt that he committed the offense of aggravated assault with intent to participate as a member of the criminal street gang, Hated by Many.

Section 71.02(a)(1) of the Penal Code provides, in relevant part, that a person commits an offense if, with intent to establish, maintain, or participate as a member of a criminal street gang, the person commits or conspires to commit one or more of the listed offenses, including aggravated assault. TEX.PENAL CODE ANN. § 71.02(a)(1)(West Supp. 2012). A criminal street gang is defined to mean three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities. TEX.PENAL CODE ANN. § 71.01(d)(West 2011). Count II of the indictment alleged that Appellant, with intent to participate as a member of a criminal street gang, Hated by Many, committed the offense of aggravated assault by causing serious bodily injury to Rodriguez. *See* TEX.PENAL CODE ANN. § 22.02(a)(1)(West 2011). The application paragraph of the court's charge authorized the jury to convict Appellant if it found that he committed the offense of aggravated assault with intent to participate as a member of Hated by Many, Hoover Street, and/or the Crips. Count III alleged that Appellant, with intent to

participate as a member of a criminal street gang, Hated by Many, committed the offense of aggravated assault by using or exhibiting a deadly weapon during the commission of the assault and causing bodily injury to Rodriguez. *See* TEX.PENAL CODE ANN. § 22.02(a)(2). The application paragraph permitted the jury to find Appellant guilty of Count III if it found that he committed the offense of aggravated assault with intent to participate as a member of Hated by Many, Hoover Street, and/or the Crips.

We do not understand Appellant to argue that the State failed to prove that he committed the offense of aggravated assault as alleged in Counts II and III.[2] We have construed his brief as asserting that the evidence is insufficient to prove that he acted with the requisite specific intent to participate as a member of the Crips. Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004). There is substantial evidence showing that Romero is a member of the Crips, a criminal street gang, and he associates with the criminal street gang, Hated by Many. Committing assaults is one of the criminal activities engaged in by the Crips. Appellant committed the offense with other gang members, White (Hated by Many), Baker (Crips and Hated by Many), and Babers (Crips and Hated by Many). Templeton testified that just a few minutes before the assault, Appellant approached Crips members, Babers and Baker, and said they needed to "violate" someone who did not have Crip knowledge. The group excluded Templeton from the remainder of the conversation because he was not a Crip. After the conversation concluded, Appellant, Babers, and Baker went inside and moments later the fight

---

[2] Appellant's entire sufficiency argument, as it relates to Counts II and III, consists of three sentences: "As to Counts II and Three, the State introduced evidence, over Appellant's objections of at least two (2) extraneous offenses - the Deadly Conduct offense of November 12, 2007 and the January 30, 2010 assault on Templeton - to somehow establish intent and that Appellant was a member of the HBM street gang. Despite this prejudicial and irrelevant evidence, the State failed to elicit any evidence that [Appellant] intentionally committed the act against Rodriguez as a member of HBM, or as a member of a criminal street gang, or that Romero was even a member of HBM or that HBM intended to commit this act. Moreover, this fight, over a girl, did not rise to the level of proving the assault in this case constituted organized criminal activity."

started inside of the house. Taken in the light most favorable to the verdict, the evidence is sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Appellant committed the aggravated assault of Rodriguez with intent to participate as a member of a criminal street gang. Issue One is overruled.

## EXTRANEOUS OFFENSES

In Issue Two, Appellant argues that the trial court abused its discretion by admitting during the guilt-innocence stage of trial two extraneous offenses because he was not directly involved in either offense. Appellant argues that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX.R.EVID. 403.

### *Relevant Law and Standard of Review*

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX.R.EVID. 404(b). But it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id*. For evidence of other crimes to be admissible, it must be relevant for a purpose other than to show the character of a person and that he acted in conformity with it. *See* TEX.R.EVID. 404(b).

Even when the extraneous offense evidence is relevant for a non-character conformity purpose, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX.R.EVID. 403. In conducting a Rule 403 balancing test, the trial court must balance: (1) the inherent probative value of the evidence and (2) the State's need for that evidence, against any tendency of the evidence to (3) suggest decision on an improper basis, (4) confuse or distract the jury from the main issues, or (5) be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that

presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative. *See Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006).

We review the trial court's admission of extraneous offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible*, 175 S.W.3d at 731. A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz*, 279 S.W.3d at 344.

*The 2007 Drive-by Shooting*

Roynisha Vandiver, the sister of Antoine Baker, testified that in November of 2007, she was "jumped" by several members of a rival gang, the Bloods, including Travell Gomez. Vandiver and several other members of the Crips and HBM, including Appellant, Baker, and White, went to confront them but Gomez and his brothers came out of the house carrying bats. Vandiver's group fled. Afterwards, Appellant and the others talked about getting a gun to "handle business." "Squeaky" Andre Harris gave Appellant a handgun. Appellant loaded it, cocked it, wiped off his prints, and handed it to Baker. Appellant and Squeaky stayed at Vandiver's house while Vandiver, Baker, and two other individuals drove back to Travell Gomez's house. Baker got out of the car, fired three or more shots at the house, and then fled. Vandiver was arrested a short time later.

We will begin by examining the probative value of the evidence and the State's need for

it. In connection with Counts 2 and 3, the State had the burden to prove beyond a reasonable doubt that Appellant acted with intent to participate as a member of a criminal street gang when he committed the offense of aggravated assault. To carry its burden, the State was required to show that Appellant and his companions had a common identifying sign or symbol or an identifiable leadership and they "continuously or regularly associate in the commission of criminal activities." TEX.PENAL CODE ANN. § 71.01(d). Consequently, evidence of Appellant's gang membership and some extraneous offenses would be not only relevant, but essential to meet the State's burden of proof. *See Hernandez v. State*, 52 S.W.3d 268, 282 (Tex.App.--Corpus Christi 2001, no pet.)(evidence of defendant's gang-related activities was admissible to prove defendant was member of criminal street gang and regularly engaged in criminal activity, as required for conviction of engaging in organized criminal activity). Appellant argues that the evidence does not have any probative value because he was not directly involved in the drive-by shooting. In *Jackson v. State*, 314 S.W.3d 118 (Tex.App.--Houston [1st Dist.] 2010, no pet.), the First Court of Appeals addressed the admissibility of gang-related extraneous offense evidence in a prosecution for organized criminal activity. The court of appeals noted that specific evidence regarding prior offenses can be probative of the defendant's intent to participate in organized criminal activity provided that the evidence shows the defendant was "involved" in the prior offenses. *Id.*, 314 S.W.3d at 127-28. The court held that evidence of two prior gang-related offenses was not probative of the defendant's intent because he was not involved in the prior offenses. *Id.* at 128. In this case, there is evidence showing that Appellant acted as a party in the 2007 drive-by shooting in that he participated in the discussions about getting a gun to use against the rival gang members, and after Harris gave them the gun, Appellant loaded it, cocked it, wiped off his fingerprints, and handed it to Baker. This certainly

constitutes some evidence, if believed by the jury, that Appellant acted with intent to promote or assist the commission of the offense, and he directed, encouraged, aided, or attempted to aid Baker's commission of the offense. We conclude that the evidence is probative of Appellant's intent to participate as a member of a criminal street gang.

The State had a considerable need for the extraneous offense evidence because it was required to prove that Appellant committed the aggravated assault with intent to participate as a member of a criminal street gang. The intent element was hotly contested at trial because Appellant asserted that the aggravated assault and murder of Rodriguez was not gang-related at all but was simply an argument over a woman that escalated into a fight. Vandiver's testimony showed that the Crips and HBM members had previously assaulted someone who the gang members believed had wronged one of the gang members. It was the State's theory that the gang members assaulted Rodriguez in retaliation for him disrespecting White by interfering with his advances on Aileen Favela. With respect to the tendency of the evidence to suggest decision on an improper basis, the trial court instructed the jury that it could not consider the extraneous offenses unless it found beyond a reasonable doubt that he participated in the extraneous offenses, and even then, it could consider the evidence only in determining whether Appellant intended to participate as a member of a criminal street gang as alleged in Counts II and III of the indictment. We presume the jury followed the instructions of the trial court. *See Kirsch v. State*, 306 S.W.3d 738, 748 (Tex.Crim.App. 2010). The presumption is rebuttable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex.Crim.App. 2005). Appellant has failed to rebut the presumption. There is no evidence in the record from which it can be concluded that the extraneous offenses would confuse or distract the jury from the main issues or that the jury

would give the evidence undue weight. Finally, Appellant contends that the presentation of the evidence took a "substantial amount of time." The State's case-in-chief began on February 1, 2010 and the parties gave their closing arguments on February 10, 2010. The guilt-innocence phase of trial, not including the defense's witnesses, voir dire or closing arguments, is recorded on seven volumes of the reporter's record and consists of approximately 1,492 pages. Vandiver's direct examination about the extraneous offense is contained on nineteen pages of the reporter's record. Defense counsel engaged in a detailed cross-examination of Vandiver but it did not focus exclusively on the extraneous offense. The trial court could have concluded that Vandiver's testimony, in the context of the entire trial, consumed a relatively small amount of time and was not cumulative. The trial court acted within its discretion by concluding that the probative value of the extraneous offense was not substantially outweighed by the danger of unfair prejudice.

*Retaliatory Assault of Templeton*

The State presented evidence that Appellant, while in jail, spoke to Shaka King and gave him the names of prospective witnesses. Appellant instructed King to tell those witnesses that he had not done anything. In another telephone call, Appellant said that he knew who had snitched on him because he had seen the videotaped statements. After the jury had been selected, members of HBM assaulted James Templeton, a co-defendant who had given a videotaped statement. Templeton suffered serious injuries during the assault, including fractures of the jaw, cheek, and orbital socket. One of the people who participated in the assault of Templeton told him some guys wanted to "beat [his] ass" for snitching on Marcus White and "everyone else." Templeton testified that he had been warned by HBM members to not testify in any of these cases, but Appellant had not personally warned him.

- 15 -

While the evidence of Appellant's involvement in the assault on Templeton is not overwhelming, Appellant's statement that he knew who had snitched on him because he had seen the videotaped statements and his instructions to King to tell the witnesses that he had not done anything, when combined with the warnings Templeton had been given to not snitch, permit an inference that Appellant encouraged the gang members to assault Templeton. This evidence has probative value because it shows that the gang members retaliate against a person who engages in conduct displeasing to the gang by assaulting that person. Appellant argues that the State did not need the evidence because it had other evidence tending to prove Appellant's connection to the gang. The evidence was not admitted to show Appellant's connection to the gang but to prove that Appellant committed the aggravated assault of Rodriguez with intent to participate as a member of a criminal street gang.

As already discussed, the trial court instructed the jury that it could not consider the extraneous offenses unless it found beyond a reasonable doubt that Appellant participated in the extraneous offenses, and even then, it could consider the evidence only in determining whether Appellant intended to participate as a member of a criminal street gang as alleged in Counts II and III of the indictment. Appellant has failed to rebut the presumption that the jury followed the trial court's instructions. *See Kirsch*, 306 S.W.3d at 748; *Thrift*, 176 S.W.3d at 224. Further, there is no evidence that the admission of this extraneous offense would confuse or distract the jury from the main issues or that the jury would give the evidence undue weight. Appellant argues that the presentation of this evidence took a substantial amount of time but Templeton's direct examination testimony about the extraneous offense consisted of only twenty-one pages of a lengthy trial record. We conclude that the trial court did not abuse its discretion by admitting the extraneous offense evidence related to the gang members' retaliatory assault on Templeton.

Issue Two is overruled.  Having overruled both issues, we affirm the judgment of the trial court.


September 5, 2012                    _____
                                     ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)